GENERAL MOTORS CORPORATION,
Respondent,

v.

FAIR EMPLOYMENT PRACTICES DIVI-
SION OF the COUNCIL ON HUMAN
RELATIONS of the CITY OF ST.
LOUIS et al., Appellants.

No. 60141.

Supreme Court of Missouri,
En Banc.

Dec. 18, 1978.

Jack L. Koehr, Charles W. Kundered, Judith A. Ronzio, St. Louis, for appellants.

James E. McDaniel, James C. Brandenburg, St. Louis, Otis M. Smith, General Motors Corp., Detroit, for respondent.

RENDLEN, Judge.

The Fair Employment Practices Division of the Council on Human Relations of the City of St. Louis (Division) and its individual members appeal from a judgment of the circuit court of St. Louis City reversing the Division's order finding General Motors Corporation (General Motors) guilty of discriminatory employment practices under St. Louis City Ordinance 51512.

Forrest Syms, a probationary employee of General Motors, filed a complaint with the Division, charging racial discrimination in General Motors' termination of his employment. Complainant had previously worked at the respondent's Chevrolet Shell Plant from 1967 until 1969. On December 18, 1970, he had been hired at respondent's St. Louis Fisher Body Plant as a probationary employee. He claims that during the first day on the job he became dizzy and fell. Complainant went to the plant nurse where his request to see a doctor was refused by the nurse who told him to return to work. He did so, but later returned claiming that the nature of the work caused him to become dizzy. The nurse again denied his request to see a doctor, ordering him to return to the assembly line; instead, claimant went to the Labor Relations Office repeating his assertion of dizziness and again requesting to see a doctor. Once again his request was denied and he was told to return to work. The Division found that his performance on the job was thereafter monitored by management, who found it defective, and at the same time complainant's prior work record at the Chevrolet Shell Plant was reviewed. Within about five hours of complainant's commencement of work for respondent on December 18, 1970, respondent terminated him as a probationary employee on the grounds that his work record and performance indicated unsuitability. We expressly find that the nurse's conclusion that complainant was feigning dizziness was a significant factor entering into this management decision.

General Motors' review of Syms' prior work record revealed several disciplinary suspensions for violation of company rules and frequent leaves of absence for such stated reasons as "exhaustion." The observation of Syms' work on the day in question disclosed that approximately fifty percent of the work performed was improperly done causing problems down the assembly line. Syms was informed that his termination was based upon three factors, (1) he had been assigned an easy job, given more than ample break-in time, but continued to perform in an improper manner, (2) the medical department could find no substantiation for his claim of dizziness, and (3) if, indeed, he were dizzy, a moving assembly line was no place for him to be working.

The Division, by its two to one decision, determined General Motors had unlawfully discriminated against complainant and ordered his reinstatement with back pay from the date of termination. From that order, General Motors petitioned for judicial review. The circuit court in the proceedings there, sustained General Motors' motion for summary judgment and found the Division's order "is invalid, illegal, not authorized by law, and is unsupported by competent and substantial evidence, is arbitrary and capricious, and the same is hereby reversed." This appeal followed.

■ We first consider respondent's contention that "appellants have no proper jurisdictional basis to be before this court." Respondent argues that (1) the questions of constitutional construction and validity of the ordinance were not raised at the earliest opportunity and (2) the trial court made no ruling with respect to such issues, concluding that the cause is not within the ambit of

this Court's jurisdiction under Mo.Const. art. V, § 3. Respondent cites *Kelch v. Kelch*, 450 S.W.2d 202 (Mo.1970), *transferred* 462 S.W.2d 161 (Mo.App.1970), and also *Kansas City v. Graybar Electric Co.*, 454 S.W.2d 23 (Mo.1970), wherein it is stated:

[I]n order for this court to have appellate jurisdiction based upon the existence of a constitutional question, it must appear that the trial court considered and passed on the same. . . . "It is only when a constitutional question has been properly raised, and passed upon by the trial court, and ruled adversely to the party appealing, that this court acquires jurisdiction upon account of such constitutional question being involved." 454 S.W.2d at 25 (citations omitted).

The contention that appellants failed to raise their constitutional arguments before the trial court is without merit. From the record it appears the Division sustained the original complaint and in so doing must necessarily have considered the ordinance valid. Only when General Motors made its challenge to the ordinance's validity in the circuit court proceeding was it incumbent upon appellants to assert the constitutionality of the ordinance and the city's authority to enact the same under art. VI, § 19(a) of the Missouri Constitution.[1] This they did by their memorandum filed in response to General Motors' motion for summary judgment, thereby raising with particularity the issues involving construction of art. VI, § 19(a), and the authority of that section as justification for the ordinance's adoption and application.

■ Respondent's next contention that "the trial court made no ruling with respect to the constitutional issue appellants raise before this court" is also not well taken. The circuit court, in its extensive, well-reasoned memorandum opinion filed in connection with its judgment order, dealt with the issues presented and sustained respondent's constitutional challenge to the ordinance. Implicit in the trial court's ruling of unconstitutionality is a rejection of the Division's art. VI, § 19(a) defense, thus providing a basis for our consideration of the cause under art. V, § 3. *State ex rel. State Highway Commission v. Wiggins*, 454 S.W.2d 899 (Mo. banc 1970).

■ Turning now to the principal issue at bar, we conclude there was no substantial evidence to support the Division's determination and accordingly we affirm the circuit court's order of reversal. Assuming arguendo the Division was correct in adopting, as it did, the standards of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973),[2] we find

---

1. Article VI, § 19(a), adopted at a special election October 5, 1971, reads:

 Any city which adopts or has adopted a charter for its own government, shall have all powers which the general assembly of the state of Missouri has authority to confer upon any city, provided such powers are consistent with the Constitution of this State and are not limited or denied either by the charter so adopted or by statute. Such a city shall, in addition to its home rule powers, have all powers conferred by law.

 Appellants argue that § 19(a) is authority for the city's having adopted the fair employment practices ordinance. General Motors responds that an ordinance invalid *ab initio* cannot be saved by § 19(a). We will not decide this constitutional question because it is not necessary to our resolution of the case. *City of St. Louis v. Missouri Commission on Human Rights*, 517 S.W.2d 65, 71 (Mo.1974); *City of St. Joseph v. Christgen*, 513 S.W.2d 458 (Mo. 1974).

2. The circuit court held that the Division erred by employing the principles of *Green* rather than *Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976), for guidance in assessing the evidence of discrimination. The court interpreted *Green* to hold that under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e–17 (1976), "one complaining of discriminatory hiring practices had merely to show that an employer hired a disparate number of whites to blacks" in order to shift the burden of proof to the employer to show "a proper and legal reason for its refusal to hire the complainant." *Green* instead sets forth the requirements for a prima facie case of racial discrimination in a non-class action which are listed later in the text of the opinion. *Washington v. Davis* held that claims of racial discrimination founded on the Fourteenth Amendment rather than on Title VII must make a showing of the employer's intent to discriminate for a prima facie case. We do not reach the question of whether the principles of

that complainant failed to prove an essential element of his employment discrimination case. Under *Green,* a non-class action under Title VII must show the following elements to shift to the employer the burden of justifying its refusal to hire the minority applicant: (1) plaintiff belongs to a minority; (2) plaintiff applied and was qualified for a job for which applications were sought; (3) despite these qualifications, plaintiff was rejected; and (4) the position remained open and applicants were sought after plaintiff's rejection. 411 U.S. at 802, 93 S.Ct. 1817. The Division decided these requirements were satisfied by certain evidence which it summarized as follows:

> The uncontested facts reveal that complainant, a Black man, possessed two years of recent automobile assembly work experience prior to making application at the Fisher assembly facility; that he made such application at a time when there were several assembly positions available; that within hours of commencing the (up to) 30-day process by which he might have obtained regular status at respondent's plant, he was terminated; and that, subsequent to such termination, assembly positions remained available.

 It is apparent that the Division determined the second of the elements described in *Green* was met by resort to complainant's previous work experience. The Division nowhere indicates whether this previous experience reflected competence to handle the job complainant applied for here. Assuming it did and that a prima facie case was made, General Motors clearly overcame that prima facie showing with evidence of complainant's unfitness for the position. At the Division hearing, General Motors presented unrefuted evidence from several witnesses that the job to which complainant was assigned required no more than forty-five minutes to one hour of training and supervision. Complainant worked at the job for five hours. For a brief time his work was satisfactory, but his performance soon deteriorated and was so inferior that it was necessary to withdraw fifty percent or more of the pieces he installed further down the line. When the foreman attempted to point out the inadequacy of complainant's performance, his response was, "Quit bugging me." Complainant offered no evidence to refute that of General Motors concerning the training time necessary for the job. There was no evidence before the Division to support its conclusion that complainant was not "accorded an adequate opportunity to demonstrate whether or not he was an appropriate candidate for regular employment." [3] The substantial evidence in the record was to the contrary.

*Washington v. Davis, McDonnell Douglas Corp. v. Green, Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971) (discriminatory impact under Title VII), or any other federal case apply to this agency action under a municipal ordinance.

**3.** The Division's finding made much of the fact that General Motors did not call the nurse who impliedly considered complainant's dizziness to be feigned.

> The thrust of [General Motors'] defense is that complainant was terminated as unsatisfactory because he was feigning dizziness . . . .. [W]e conclude that, but for the nurse's diagnosis, complainant would have been retained, . . . [General Motors'] failure, after repeated requests to produce her, especially when coupled with information on record supporting complainant's contention . . ., requires us to conclude, on balance, that the nurse's diagnosis was in error. Our conclusion here is buttressed by

our belief that complainant's request to see a physician was reasonable on its face, and failure of the nurse to supply us with her rationale for denying that request therefore persuades us that this denial was arbitrary. Arbitrary conduct suffusing employment decisions which adversely affect minority employees is highly suspect and will not avail for purposes of rebutting complainant's prima facie case.

The dissenting opinion in the Division's decision found no support in the record for complainant's contention of dizziness. Furthermore, the Division misperceives General Motors' defense, which was that Syms was not adequately performing a relatively simple job. Nevertheless, any inference drawn from the absence of the nurse does not refute General Motors' proof relating to its motivation for the termination. On the whole record, such absence was simply not substantial evidence, alone or with the statistical showing made sufficient to support the Division's findings.

 Although afforded ample opportunity so to do, complainant offered no evidence that other probationary employees, black or white, who were terminated on the stated ground of improper job performance, had been given more training or more time to demonstrate ability. Thus the Division's conclusions that General Motors' conduct towards complainant was callous, arbitrary, or indicative of discrimination, is not supported by the record. Accordingly, any inference of discrimination arising from the statistical showing that more black than white probationary employees had been terminated during a three-month period, was rebutted by plaintiff's unrefuted evidence that complainant's discharge was related to job performance only. In *McDonnell Douglas Corp. v. Green, supra,* the United States Supreme Court held the evidence adduced by the employer sufficiently refuted the plaintiff's prima facie case and remanded the case only because the claimant had not been given an opportunity to show that the stated reason for rejecting his employment application was false or was itself being discriminatorily applied. Here, complainant had such an opportunity but failed to offer evidence that he was not given as much training and time to demonstrate his ability as were others or that such training and time was inadequate. Therefore, the Division erred in its application of the procedures and rules laid down in *McDonnell Douglas Corp. v. Green.*

 None of the foregoing is intended to indicate that the statistical evidence that more black than white probationary employees were terminated during a three-month period is not relevant to a case of allegedly discriminatory discharge. It is a factor to be considered, especially in view of the recognized difficulty in obtaining specific evidence of discriminatory purpose in an individual case. However, the statistical compilation in this case did not support the Division's conclusion that complainant was not given adequate training or time in which to demonstrate his competence in the face of contrary unrefuted testimony from several witnesses possessing experience in the area. Where evidence on an issue is in conflict, the Division may accept that which it chooses to believe and reject that which it does not. Courts will not interfere with such choices. *Hill v. Dept. of Public Health & Welfare,* 520 S.W.2d 182 (Mo.App.1975). But when, as here, the evidence on a point is uniformly to the same effect, the Division may not blindly reach a contrary conclusion unsupported by evidence. Under the federal cases, the mere existence of a racially disparate impact resulting from employment practices or employment tests, in and of itself, has not been held to sufficiently prove discriminatory purpose where the practice or test is shown to bear a demonstrable relationship to successful performance of the job. *Griggs v. Duke Power Co.,* 401 U.S. 424, 431, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). The question of whether or not complainant received ample training and time to demonstrate his ability is a matter of proper concern for his union representatives; indeed, complainant did file a complaint with the National Labor Relations Board, which, after an investigation, rejected his claim. But in the absence of any evidence that the time and training were not adequate or that other probationary employees were treated differently, it is not the function of the Division, charged with determining discriminatory practices, to substitute its judgment of assembly line training and practices unsupported by evidence of probative value for that of the witnesses who testified on the subject. For this reason we affirm the judgment of the trial court and do not reach the other bases upon which the trial court rested its judgment reversing the Division's order.

However, it might prove of benefit for similar proceedings in the future, to comment on another matter not raised by either party before the circuit court or in this appeal. At no time before the Division or in the circuit court was the challenged municipal ordinance offered or introduced in evidence. The employee as complainant was burdened with proving that his firing was discriminatory and violative of the ordinance's provisions. A necessary element of his claim was the ordinance itself. In

their reliance upon that ordinance, the employee and the Division, an appellant here, failed to make proof thereof or obtain a stipulation as to its adoption and terms. This prime ingredient or essential fact, indispensable for the original agency determination and for judicial review, is missing.

Courts may not take judicial notice of municipal ordinances; instead such ordinances must be admitted in evidence or stipulated by the parties. *City of St. Joseph v. Roller*, 363 S.W.2d 609 (Mo.1963); *State ex rel. Freeze v. City of Cape Girardeau*, 523 S.W.2d 123 (Mo.App.1975); *City of Rolla v. Riden*, 349 S.W.2d 255 (Mo.App. 1961). No such stipulation regarding the ordinance was recited or offered in evidence. Though General Motors referenced the ordinance by number in its petition for judicial review, such reference does not prove the ordinance's terms. Pleadings as a general rule do not prove themselves. *State ex rel. Phelps v. McQueen*, 296 S.W.2d 85 (Mo. banc 1956); *Stewart v. Brown*, 546 S.W.2d 204 (Mo.App.1977). Nor was the reference to the ordinance number appearing in the employee's complaint before the commission sufficient to bring it into the record for the court. *City of Rolla v. Riden, supra.* One need but ask how an agency's determination of an ordinance violation can be reviewed and affirmed without the ordinance having been properly put in evidence before the agency, to recognize such failure of proof effectively precludes any determination as to the validity of the ordinance, and vitiates any agency decision rendered in reliance thereon. *Queen of Diamonds, Inc. v. Quinn*, 569 S.W.2d 317 (Mo.App.1978). However, we considered the question on the merits because it is apparent that all parties, the Division and the circuit court had the ordinance before them during these proceedings and no objection was made at any stage before the commission, the trial court or in this appeal to the movant's failure in the first instance to make formal offer of the ordinance and proof of its adoption. We reiterate that our holding does not rest on this rule of evidence; rather, for the reasons first discussed, we find the decision of the Division was not supported by substantial competent evidence.

The circuit court under the standard of review provided in § 536.140, RSMo 1969, properly reversed and its judgment is affirmed.

MORGAN, C. J., and BARDGETT, FINCH, DONNELLY and SEILER, JJ., concur.

SIMEONE, J., not participating because not a member of the Court when cause was submitted.