In the Matter of FORECLOSURES OF LIENS FOR DELINQUENT LAND TAXES BY ACTION IN REM COLLECTOR OF REVENUE, and Lewis Mitchell Company, Respondents,

v.

Mohammad Bhatti, Appellant.

No. SC 90732.

Supreme Court of Missouri, En Banc.

March 1, 2011.

Rehearing Denied April 26, 2011.

Angela S. Yee, Yee Law Firm, St. Louis, for Bhatti.

Richard Blanke, Uthoff, Graeber, Bobinette & Blanke, St. Louis, for Lewis Mitchell Company.

Anthony J. Sestric, The Sestric Law Firm, Tyrone Taborn, St. Louis, for City's Collector of Revenue.

Gordon Schweitzer Jr., St. Louis, for City's Sheriff.

Michael S. Kisling, Jefferson City, for State's Department of Revenue.

MARY R. RUSSELL, Judge.

The Collector of Revenue of the City of St. Louis filed a tax lien foreclosure suit under the Municipal Land Reutilization Law[1] (MLRL) against a property owner who failed to pay real estate taxes for three years. After a judgment of foreclosure, the real estate was sold at a tax sale. The purchaser sought confirmation of the tax sale, which the circuit court granted. The owner, who had been delinquent on his taxes, filed a motion to set aside the tax sale and the confirmation judgment because he alleged that he did not receive notice of either.

The circuit court overruled the motion, and the owner appeals to this Court, arguing that the MLRL violated his due process rights because he did not receive notice of either the tax sale or the confirmation hearing. Under *Jones v. Flowers*, 547 U.S. 220, 126 S.Ct. 1708, 164 L.Ed.2d 415 (2006), if a government entity knows or has reason to know that a notice was ineffective, then it must take reasonable, additional steps to notify the owner of the

---

1. Sections 92.700 to 92.980. Unless otherwise noted, all statutory references are to RSMo 2000.

potential taking of the property. Because the owner failed to present evidence that the sheriff knew or should have known that the notice of the tax sale was ineffective, the sheriff was not required to take any additional steps to notify the owner of the potential taking of the property. The circuit court's judgment is affirmed.

## I. Background

Mohammad Bhatti (Owner) failed to pay real estate taxes for 2005, 2006, and 2007 on a house he owned in St. Louis. The collector proceeded against him under the MLRL. To satisfy the tax lien attached to property, the MLRL requires three events to take place: (1) a judgment of foreclosure; (2) a tax sale; and (3) a judgment confirming the tax sale.

Pursuant to section 92.720, the collector filed a foreclosure action to enforce the tax lien. After Owner defaulted, the circuit court entered a judgment of foreclosure and directed the parcel to be sold to satisfy the tax lien. In accordance with section 92.810, the Sheriff of the City of St. Louis sent Owner notice of the pending tax sale via first-class mail to his last-known address, which was the address of the parcel being foreclosed and was the address provided by Owner when he acquired title. The parcel was sold at a sheriff's tax sale to Lewis Mitchell Company (Purchaser) for $7,600. When Owner failed to redeem the property prior to the tax sale, he was "barred and forever foreclosed of all his right, title and interest" to the parcel. Section 92.750. Purchaser, pursuant to section 92.840, filed a motion to confirm the sale with the circuit court. Prior to

the confirmation hearing, Purchaser sent Owner notice of the hearing to the same address used by the sheriff. The circuit court, following the mandate in section 92.840, found that the purchase price was adequate consideration for the parcel and confirmed the sale.

Five months later, Owner filed a motion to set aside the tax sale and the confirmation judgment. Owner made no objection about not receiving notice of the foreclosure suit or judgment. Instead, he claimed error in not receiving notice of the tax sale and the confirmation hearing, arguing his constitutional right to due process was violated. The circuit court held an evidentiary hearing on his motion. A real estate agent testified that she was the agent for Owner's parcel and that there was a sign in the front yard indicating that it was for sale. Owner testified that he did not live at the property, but because he was renovating the house, he was there frequently.[2] He never notified the assessor of any change of address. Owner also testified that he never received a tax bill for the parcel or a notice of the sheriff's tax sale.[3] No other evidence regarding the notice was presented.

The circuit court overruled the motion to set aside the confirmation judgment and the tax sale. The circuit court deemed Owner's testimony that he never received notice credible, but it found that the notices were sent to the address in the "records of the Assessor" as provided by Owner. The circuit court denied Owner relief pursuant to *Jones v. Flowers*, because he failed to present evidence that the tax sale

---

**2.** Owner testified at the hearing that the renovations were extensive, including electrical wiring, plumbing, hardwood floors, a deck, and a fence. He claims that he invested substantial resources into renovating the house.

**3.** There was no evidence in the record that Owner was a "relative newcomer to St. Louis," as stated by the dissent. Owner was familiar with paying real estate taxes. He acknowledged that he received tax bills and was current on real estate taxes on other property he owned in St. Louis.

notice was returned indicating that the sheriff knew or had reason to know that the notice was ineffective.

Owner filed a motion for a new trial, claiming newly discovered evidence. He attached four exhibits to the motion. Three exhibits were envelopes that were sent to the parcel's address *after* the tax sale. All three envelopes were returned undelivered. The fourth exhibit was an affidavit from a mail carrier that stated that no mail was delivered to the parcel's address because it was vacant. The circuit court overruled the motion because Owner failed to demonstrate that the evidence could not have been obtained in time for trial by exercising due diligence.

Owner appeals to this Court, arguing that the circuit court erred in overruling his motion to set aside the tax sale and confirmation judgment. He claims that the notice provisions of the MLRL, as applied to him, violate his rights to due process.[4] This Court has jurisdiction pursuant to article V, section 3 of the Missouri Constitution.

## II. Standard of Review

■ The circuit court's overruling of the motion to set aside the tax sale and confirmation judgment will be sustained unless there is no substantial evidence to support it or unless it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). This Court will reverse the judgment as against the weight of the evidence with caution and with a firm belief that the judgment is wrong. *Id.*

## III. Owner Failed to Present Evidence Regarding Knowledge of the Ineffective Notice

Owner claims that, because he failed to receive notice of either the tax sale or the confirmation hearing, the application of the MLRL violates his constitutional due process rights.[5] He contends that the sheriff had reasonable, additional options for notifying him of the pending tax sale.[6] Owner's argument relies on the requirements for constitutionally sufficient notice, as set forth in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), and *Jones v. Flowers.*

■ No person may be deprived of property without due process of law. U.S. CONST. amend. XIV; MO. CONST. art. I, sec. 10. "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested par-

---

4. Although this is an "as applied" challenge, notice by first-class mail has passed constitutional scrutiny in "facial" challenges. *See Collector of Rev. of City of St. Louis v. Parcels of Land Encumbered with Delinquent Tax Liens*, 585 S.W.2d 486, 488 (Mo. banc 1979) (considering a facial challenge and upholding the notice provisions of the MLRL); *see also Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950) (finding notice by publication inadequate and authorizing notice by first-class mail).

5. At the circuit court, Owner also claimed that his right to redemption was violated.

6. Owner's motion contended that the collector was the entity from which he never received notice of the tax sale. The motion failed to recognize that section 92.810 mandates that the sheriff, not the collector, sends the notice. However, Owner's brief more broadly argues that the City of St. Louis had the obligation to send notice of the tax sale. In this opinion, this Court will follow the clear language of section 92.810 and refer to the sheriff as the one obligated to give notice of a pending tax sale.

ties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314, 70 S.Ct. 652. In *Jones v. Flowers*, the United States Supreme Court recognized that the *Mullane* standard for constitutionally sufficient notice does not require that the property owner actually receive notice. 547 U.S. at 226, 126 S.Ct. 1708. A government entity must take reasonable, additional steps to notify the property owner if it knows or has reason to know that the notice was ineffective. *Id.* at 234, 126 S.Ct. 1708; *see also Schlereth v. Hardy*, 280 S.W.3d 47, 50 (Mo. banc 2009).

### A. Notice of the Tax Sale

■ Owner offered no evidence at trial that the sheriff's notice was not reasonably calculated to apprise him of the tax sale or that the sheriff knew or should have known that the notice was ineffective. The address the sheriff used was the parcel's address, which Owner provided in the recorded deed as the address for receiving real estate tax notices.[7] *See* section 59.330. Despite that address being the address of the vacant home, Owner never corrected the address with officials.

The dissent cites *Robinson v. Hanrahan*, 409 U.S. 38, 93 S.Ct. 30, 34 L.Ed.2d 47 (1972), and *Conseco Finance Servicing Corp. v. Missouri Department of Revenue*, 195 S.W.3d 410 (Mo. banc 2006), for the proposition that first-class mail was constitutionally insufficient under the facts of those cases. Yet in both cases the government had knowledge that the notice was sent to a residence to which the person entitled to notice did not have access. In *Robinson*, the state knew that the person entitled to receive notice was incarcerated, 409 U.S. at 40, 93 S.Ct. 30, and in *Conseco*, the state knew that the manufactured home to which the notice had been sent was abandoned by the persons entitled to receive notice. 195 S.W.3d at 416. In contrast, here, there was no evidence that the sheriff had knowledge that Owner could not have received notice at the address to which notice was sent.[8]

Owner pleaded in his motion to set aside the tax sale and confirmation judgment that he did not receive notice of either. He also pleaded that there were reasonable, additional methods that the sheriff could have used to notify him of the pending tax sale. Owner proposed three additional methods: (1) the sheriff could have used the address Owner provided for the building permits he obtained from the city;[9] (2) the sheriff could have driven by the property, which would have revealed that this property was for sale and that Owner could have been contacted through the real estate agent; or (3) the sheriff could have posted notice on the property.[10]

---

7. Obviously, if an owner did not plan to live at the parcel, he would have listed a different address where he could receive mail.

8. Despite the dissent's belief that it is "common knowledge that many such foreclosure properties are vacant," the dissent fails to appreciate that in these current tough economic times, many property owners continue to reside in their homes as long as possible because they cannot afford to move and live elsewhere. Our statutes contemplate this situation and provide for unlawful detainer actions to remove these persons.

9. It is unclear why the sheriff should use a different address from what Owner provided for real estate tax purposes. This logic would require the sheriff in future cases to disregard addresses as provided by owners for real estate tax purposes and search not only building permits but also search endlessly for different addresses. This approach is impracticable.

10. The dissent also suggests personal service as an alternative form of service to avoid the hardship caused by ineffective first-class mail. Absent some constitutional guarantee being infringed, it is the responsibility of the legislature, not the courts, to afford such relief by

Without knowledge that the notice was not reasonably calculated under these circumstances to apprise Owner, the sheriff was not required to take any further steps to notify Owner. *See Flowers,* 547 U.S. at 234, 126 S.Ct. 1708. The dissent offers that "properties being foreclosed on may have a higher vacancy rate." The authority of this speculation is an Indiana Law Review article about *home mortgage foreclosures* in Baltimore. There was no evidence in the record that real estate subject to *tax lien foreclosures* in St. Louis have a high vacancy rate.

■ The circuit court held an evidentiary hearing at which Owner testified that he did not receive notice of the tax sale in the mail or otherwise. There was no evidence presented at the evidentiary hearing as to whether the sheriff knew or had reason to know that the notice of the tax sale was ineffective. Despite his failure to present sufficient evidence to establish that the notice was constitutionally ineffective at the circuit court, Owner now argues on appeal that the legal file contains a document called the "Sheriff's Sale Register" (register), which reflects that the sheriff's notice of sale was "returned to sender."

■ The register is marked as Exhibit A in the legal file, but there is no pleading, affidavit, or judgment to which it could logically be attached. It appears in the legal file as an attachment to the judgment of foreclosure, which is chronologically impossible. The judgment of foreclosure was dated June 6, 2008, and this "orphan" document was dated nearly a year later. If this document belongs elsewhere in the legal file, it is not this Court's responsibility to determine where. It is the appellant's responsibility to prepare an accurate

record on appeal, including the legal file, with the evidence necessary to support the appellant's arguments. Rule 81.12; *see also Wilkerson v. Prelutsky,* 943 S.W.2d 643, 649 (Mo. banc 1997). Although Owner claims that the register indicates that the notice the sheriff sent to him was returned undelivered by the post office, he never offered that document into evidence at the hearing or asked the circuit court to take judicial notice of it.

Instead, Owner now argues on appeal that the register was already part of the evidence under section 92.765, which states:

> Affidavits of publication of notice of foreclosure, and of posting, mailing, or other acts required by the provisions of sections 92.700 to 92.920 shall be filed in the office of the circuit clerk prior to the trial, and when so filed shall constitute part of the evidentiary documents in the *foreclosure suit.* Such affidavits shall be prima facie evidence of the performance of acts therein described, and may be so used in the trial of the suit, unless challenged by verified answer duly filed in the suit.

(emphasis added). This statute pertains to the *foreclosure* suit, which Owner did not contest. He challenges the notice for the *tax sale* and the *confirmation hearing.* Section 92.765, by its plain language, is inapplicable under the facts here.

■ Owner has failed to show that the register was part of the record in the circuit court's proceeding on the motion to set aside the tax sale and the confirmation hearing. If Owner intended to rely on the document to prove that the sheriff knew or should have known that the notice of the tax sale was ineffective, he should have offered it into evidence at the evidentiary

providing alternative methods of service. *Nelson v. City of New York,* 352 U.S. 103, 111,

77 S.Ct. 195, 1 L.Ed.2d 171 (1956). Here, no constitutional guarantee was infringed.

hearing or asked the circuit court to take judicial notice of it. The circuit court is not required to leaf through a file to determine what should be used as evidence when making its decision. *Wampler v. Dir. of Revenue*, 48 S.W.3d 32, 35 (Mo. banc 2001). The circuit court cannot be convicted of error based on evidence not in front of it but offered later on appeal.[11]

The dissent confuses the issue in this case. The cost of notices sent by the statutorily required first-class mail is not relevant to the analysis of whether a due process violation occurred under *Mullane* or *Flowers*. The issue here is whether the sheriff knew or had reason to know that the notice he sent to Owner was ineffective, and if so, whether the sheriff took reasonable, additional steps to notify Owner of the potential taking of the property. *Flowers*, 547 U.S. at 234, 126 S.Ct. 1708. The circuit court found that, despite believing that Owner did not receive the notice, there was no due process violation as Owner failed to present evidence that the sheriff knew or should have known that the notice of the tax sale was ineffective. Under these facts, *Flowers* does not require the sheriff to take any additional steps to notify the owner.

### B. Notice of the Confirmation Hearing

■■■■ Further, Owner presented no evidence regarding the notice of the confirmation proceeding. He did nothing beyond merely alleging in his motion that he did not receive notice of the confirmation proceeding. At the evidentiary hearing, he did not testify regarding the notice of the confirmation hearing, and there also was no evidence demonstrating that Purchaser knew or should have known that

the notice of the confirmation proceeding was ineffective. Allegations in pleadings must be proven at trial. *Gen. Motors Corp. v. Fair Emp't Practices Div.*, 574 S.W.2d 394, 400 (Mo. banc 1978).

### IV. Conclusion

This Court regrets the result in this case. But Owner's loss of his real estate is the result of his multiple acts of negligence. First, he was negligent in failing to pay his real estate taxes for three years. He cannot claim he did not know he owed taxes when he was current on real estate taxes on other property he owned in the City of St. Louis. Second, Owner provided an incorrect address for the purpose of notification of real estate taxes due, and he never updated his address during the preceding three years he was delinquent or filed a forwarding address with the post office. Third, when pursuing his constitutional rights in our court system, he failed to follow United States Supreme Court authority that requires him to show that the notice sent to him was not reasonably calculated to apprise him of the pendency of the action against him. Owner further neglected to present any evidence to the circuit court to prove that the sheriff knew or should have known that the notice sent was ineffective. Because of this lack of evidence, Owner did not prove that the MLRL, as applied to him, violated his right to due process.

Although this result may appear unfair, as Owner stands to lose real estate in which he has put substantial resources, neither the sheriff nor the courts can assume responsibility for Owner's multiple mistakes. As much as the dissent would like to create a new record and rewrite

---

11. The dissent argues, without citing authority, that to meet the constitutional due process standard, the sheriff should maintain records detailing when notices are "returned to send-

er." The sheriff maintained such a record, but it was not offered into evidence by Owner. Further, Owner does not challenge the notice sent by the collector.

Supreme Court precedent, this Court is compelled to consider the record before it and comply with the holdings of *Mullane* and *Flowers*. With hundreds of properties subject to tax lien foreclosure in the City of St. Louis, notions of due process and statutory law do not require the sheriff to take any further steps to find property owners, absent knowledge that notice was not received. Courts cannot impose new requirements when there has been no constitutional violation.

There is no legal basis to find the circuit court erred based on this record. The judgment is affirmed.

PRICE, C.J., BRECKENRIDGE and FISCHER, JJ., concur.

WOLFF, J., dissents in separate opinion filed.

TEITELMAN and STITH, JJ., concur in opinion of WOLFF, J.

MICHAEL A. WOLFF, Judge, dissenting.

### Introduction

The United States Supreme Court for 60 years has been sending out binding precedents explaining the due process requirements for notice—including notice by mail—but the principal opinion has marked them "return to sender." I respectfully dissent.

The foundation on which our economic system is built is the constitutional protection of property rights against government abuse and overreaching. Central to this foundation is procedural due process—the constitutional requirement that an individual has the right to notice and the right to be heard before the government can take his or her property. In this case, the city of Saint Louis took Mohammad Bhatti's property without any notice that apprised him that the city was going to take his property. The due process violation is stark.

The landmark case on the due process right to "notice" is *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), decided 60 years ago. *Mullane* authorized notice by first-class mail where the government has an interest in finding an affordable means of providing notice and where there is reasonable assurance that the notice is effective. Where the method of notice is less than the traditional service of process, *Mullane* requires that it be the "best practicable." The notice attempt here by regular mail did not meet this requirement. This failure to give notice violates "the most rudimentary demands of due process of law." *Peralta v. Heights Med. Center*, 485 U.S. 80, 84, 108 S.Ct. 896, 99 L.Ed.2d 75 (1988) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 550, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965)).

Mohammad Bhatti, the aggrieved property owner in this case, is one of many relative newcomers to Saint Louis who has bought real property, rehabbed it and, in the process, helped to arrest the decline of a great city.

Bhatti's misfortune in this case stems from the fact that he listed the property—which was vacant while he was rehabbing it—as his address where tax bills were to be sent. As a vacant property, it was an address to which the United States Postal Service does not deliver mail. Bhatti did not receive the property tax bills and was delinquent in the amount of $1,452.06; as a result, a tax lien was placed on that property.

The collector of revenue foreclosed the tax lien on the property, it was sold and a judicial proceeding was held to confirm the sale. Lewis Mitchell Company bought the property for $7,600.00, and Bhatti received

$6,147.94 after the property taxes were paid.

At the time of the foreclosure and sale, Bhatti had the property listed with a realtor for a sale price of $169,900.00.

In this whole case, first-class mail was the *only* means by which the city actually attempted to inform Bhatti of the foreclosure, the foreclosure sale and the judicial confirmation hearing. These three notices were sent to the vacant property; Bhatti received none of them.[1]

At the hearing on Bhatti's motion to set aside the judgment of foreclosure, the judge agreed that Bhatti had not received *any* notice but held that because Bhatti did not present evidence that the city was aware that the notices were not delivered, the notices were sufficient.

Under *Mullane*, Bhatti was entitled to notices that were reasonably calculated to apprise him of the judgment of foreclosure, the foreclosure sale and the confirmation hearing. While mail may be sufficient in some circumstances to satisfy due process when the property owner actually receives notice, in the circumstances of this case, notice by mail is insufficient.

Because the cost of notice is borne by the property owner or by the foreclosure purchaser when the tax lien is satisfied, there is no extra expense to the city in providing notice that actually notifies the owner in these tax foreclosure proceedings, even if the city has to use traditional service of process. There was no govern-

mental interest that justified the inadequate means of notice that were used in this case.

The government spent 42 cents in postage on two occasions and 44 cents in postage on a third occasion—a total of $1.28—to try to notify Mohammad Bhatti, the landowner whose tax bill was unpaid, that he was going to lose his property in a tax lien foreclosure. None of these regular-mail notices were delivered.

One dollar and 28 cents.

According to the principal opinion, that is all the due process to which Bhatti is entitled. For one dollar and 28 cents, a vacant home that he was rehabbing and had listed for sale for $169,900 was taken away and sold for $7,600 to satisfy the unpaid taxes of less than $1,500.[2]

### The Statutory Scheme for the City of Saint Louis

The city of Saint Louis passed an ordinance in 1971 adopting the statutory procedure of the municipal land reutilization law. At that time Saint Louis had dropped from a population of 750,026 in 1960 to 622,236 in 1970—a population loss of at least 1,000 persons per month. This rapid population decrease represents a lot of vacant properties, and expeditious lien foreclosure rules may have had some justification in the city's need to acquire title

---

1. Notice also was published in the legal notices in a legal newspaper, but from the time of *Pennoyer v. Neff*, 95 U.S. 714, 727, 24 L.Ed. 565 (1877), no Supreme Court decision has taken seriously the idea that publication actually would notify a person of the pendency of a legal proceeding. Notice by publication is "constructive notice" and is limited, following *Mullane*, only to notify those interested persons whose whereabouts truly are unknown. *Mullane*, 339 U.S. at 316, 70 S.Ct. 652.

2. Yes, the owner was three years in arrears on his taxes, but no, he had not received the tax bills, either. And yes, homeowners who may face foreclosures by mortgage holders with sloppy recordkeeping should be *very* afraid: Heaven help them, for this Court's "due process" will not.

and clear distressed empty buildings in that era.[3]

The statutory procedure provides for issuing a tax lien, foreclosing on the lien and selling the property. Section 92.700, RSMo 2000.[4] The city collector, who is responsible for collecting back taxes, may file suit to foreclose on any tax liens in the circuit court. Sections 92.715, 92.720, 92.740. Within 30 days after the suit is filed the collector must mail notice of filing to the address(es) of the owner(s) as recorded in the assessor's office, as well as publish notice of foreclosure once a week for four weeks. Sections 92.755, 92.760. Affidavits of the publication and mailing of notice are to be filed in the circuit court prior to trial. Section 92.765. The collector does not have to file an affidavit specifying whether notice has been returned, nor is the collector required to enact a process to document the return of any notices mailed. *See id.*

The circuit court then determines the amount and validity of all liens, the priorities of the respective tax bills and the amount due—including principal, interest, penalties, attorney's fees and costs. Section 92.775. The city does not bear the cost of providing notice—instead, the cost of notice is added to the tax lien to determine the total amount due to the city. The court enters a judgment of foreclosure of the liens and fixes the time and place of the foreclosure sale. *Id.* At the time of judgment, title vests in the reutilization authority in trust for the tax bill owners and taxing authorities. Section 92.835.1.

At least 20 days prior to the sale, the sheriff must send notice by mail to the owner's address. Section 92.810.3. This notice must provide the date, time and place of the sale as well as notify the owner of the right to redeem the property. *Id.* There is no requirement that the sheriff record whether the mailed notice is returned. Regardless of whether the notice is returned, the city holds a foreclosure sale as specified in section 92.820.

Either the court or an interested party can move to have a confirmation hearing of the foreclosure sale. Section 92.840. Any interested party or the court shall send notice by mail of the hearing to all owners. *Id.* If the sale is confirmed, the court orders the proceeds of the sale applied to all costs of the foreclosure process and all delinquent tax bills, with any surplus going to the owner. Section 92.840.3. After the confirmation sale, title vests in the purchaser. Section 92.835.2. There is no provision for redemption after title passes. Sections 92.715; 92.750.

By detailing the procedures followed under the municipal land reutilization law I do not mean to suggest that this is simply a Saint Louis problem, an apparently unique scheme supposedly justified by the circumstances of a city (formerly) in distress. The government, no matter how much its city is in distress, is not permitted to seize an owner's property without notice and "reutilize" it by selling it to another person to profit from it. The taking of property without notice is uncon-

3. Although the recent population figures show a far less dramatic population loss than in the 1970s and 1980s, the population decline has continued to a 2010 population of 319,294; between 2000 and 2010, the city population decreased by 29,000. U.S.Census Bureau. *Quick Facts: St. Louis City, Missouri, available at* http://quickfacts.census.gov/qfd/states/29/29510.html (last visited February 28,

2011). In the last 20 years there have been immigrants from many countries, especially from Asian nations and the Balkans, who have helped to slow the city's loss of population.

4. All citations are to RSMo 2000 unless otherwise indicated.

stitutional, un-American and, I hope, un-Saint Louis.

After title passed to Lewis Mitchell Company following the confirmation sale, Lewis Mitchell provided notice to Bhatti at his residence—which obviously was not difficult to find because his address is in various city records—that he had lost title to his property. Bhatti actually received this notice. After losing his property without receiving any of the notices prescribed under this procedure, Bhatti filed a motion to set aside the foreclosure sale contending that the proceedings had violated his due process rights.

### Due Process Requirements

No person may be deprived of property without due process of law. U.S. CONST. amend. XIV; Mo. CONST. art. 1, sec. 10. Due process requires notice that is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 309–10, 70 S.Ct. 652 (citations omitted).

*Mullane*, the seminal modern due process case, involved an action affecting hundreds of beneficiaries of trusts that were included in a pool for administration under New York law. *Id.* at 309, 70 S.Ct. 652. The purpose of the New York probate proceeding was to determine whether the beneficiaries had a claim against the trust company for mismanaging the trust or otherwise failing to meet the company's fiduciary obligations to the beneficiaries. *Id.* The United States Supreme Court, in light of the state's expressed interest in keeping the costs of the proceeding low, approved the use of first-class mail when some of the beneficiaries and their addresses were known to the trust company. *Id.* at 318–19, 70 S.Ct. 652. The Supreme Court's holding was based on the fact that some of the current income beneficiaries would receive actual notice and that these notified beneficiaries, in protecting their own interests, thereby would protect the interests of all beneficiaries, including those who had not received actual notice. *Id.* at 319, 70 S.Ct. 652.[5]

Importantly, "when process is a person's due, process which is a mere gesture is not due process." *Mullane*, 339 U.S. at 315, 70 S.Ct. 652. The means employed must be one that is "desirous of actually informing the [recipient]" of the hearing and through a means that reasonably also may notify the recipient. *Id.* If the method of notice is not reasonably certain to inform those affected, or conditions do not reasonably permit notice to be received, then the notice is insufficient to give the recipient due process of law. *Id.*

The first-class mail notice that the Supreme Court approved in *Mullane* not only was directed to a large group of individual beneficiaries, but the interests of the individuals were relatively small. *Id.* at 309, 319, 70 S.Ct. 652. Precisely the opposite is true here: There is only one person, Bhatti, whose interests are at risk and his stake is large. The careful balancing of *Mullane* is upended in this foreclosure proceeding. Unlike the interests of those affected by the New York probate procedure, in this case the city has no financial interest in providing notice on the

---

5. As to beneficiaries for whom addresses were unavailable, publication was the only means that could be used. And some beneficiaries could not be found because they were not yet born. Those who could not be notified or those whose only notice was by publication nonetheless could be affected by the court's decree because they were represented by existing beneficiaries who had been notified and whose interests were the same. *Mullane*, 339 U.S. at 313, 70 S.Ct. 652.

cheap. The city will recover the costs of the proceeding, including the cost of providing notice, from the property owner or purchaser of the foreclosed property when the tax lien—which includes the cost of notice—is satisfied.

While *Mullane* is the seminal case approving notice by mail, the Supreme Court has decided several cases since then that enforce the protection of due process in *Mullane*, proving that not every use of mail will meet the requirements of due process. The Supreme Court repeatedly has held that the sufficiency of due process depends on the "unique information about the intended recipient." *Jones v. Flowers*, 547 U.S. 220, 230, 126 S.Ct. 1708, 164 L.Ed.2d 415 (2006). For instance, *Robinson v. Hanrahan*, 409 U.S. 38, 40, 93 S.Ct. 30, 34 L.Ed.2d 47 (1972) held that a first-class mailing was insufficient to comport with the due process clause after considering the unique characteristics of the person to whom notice was due. *Robinson*—the person entitled to due process—was incarcerated in the Cook County jail, but the state sent notice to his residence listed with the secretary of state. *Id.* Under these circumstances, the state's efforts were not reasonably calculated to apprise the appellant of the proceedings because notice was sent to a residence to which Robinson did not have access.[6] *Id.*

Similarly, this Court has held that the circumstances of the notice recipient impact what type of notice is due. In *Conseco Fin. Servicing Corp. v. Missouri Dept. of Revenue*, 195 S.W.3d 410, 416 (Mo. banc 2006) the department of revenue sent notice to a house that it knew the residents had abandoned.[7] This Court held that because the notice was not "reasonably calculated" to reach the recipient, it did not satisfy due process. *Id.* The department's knowledge was based on the logical fact that when the state knows that the property is abandoned it necessarily knows that notice sent to it is not reasonably calculated to reach the owner. Similarly here, the property is known to be in foreclosure, and it is common knowledge that many such foreclosed properties are vacant.[8]

In these circumstances, merely sending notice to the residence, without attempting

---

6. *Compare Nelson v. City of New York*, 352 U.S. 103, 109–10, 77 S.Ct. 195, 1 L.Ed.2d 171 (1956) (holding that notice of foreclosure was sufficient because the city had "taken steps to notify appellants of the arrearages and foreclosure proceedings and their agent having received such notices"). Here, Bhatti did not receive such notices; therefore, to determine whether the city's notice fulfills the requirements of the due process clause warrants further discussion.

7. *Collector of Revenue of City of St. Louis v. Parcels of Land Encumbered with Delinquent Tax Liens*, 585 S.W.2d 486, 488 (Mo.1979), upheld a facial challenge to the notice provisions in the statute involved in Bhatti's case. This 1979 case is entirely distinguishable because there was no question that the 1979 property owner received the notice of foreclosure that was mailed to the owner, and the owner appeared in court to challenge the validity of notice on its face. In the present case Bhatti never received such notice; in the circumstances of this case, the notice cannot be said to have been reasonably calculated to have notified him.

8. The principal opinion distinguishes *Conseco* and *Robinson* by arguing the state had actual knowledge of the circumstances in each individual case that made notice by first-class mail not reasonably calculated to reach the recipient. The principal opinion argues Bhatti's circumstances are different because the city was unaware that his house was vacant. However, here the city knows that in this class of notice recipient—where the mailing address is the same as the foreclosed property—the circumstances are such that notice is not reasonably calculated to reach the recipient. The state's knowledge of the individual circumstances is not distinguishable from their knowledge of the circumstances of a particular class. These cases are directly on point.

to determine whether—as was the case here—the city's own records provided an alternative address, the city's method of notice is not reasonably calculated to provide notice. Bhatti, as the property owner, was entitled to notice three separate times: (1) notice of the foreclosure suit, (2) notice of the foreclosure sale and (3) notice of the confirmation hearing. Each notice was part of the foreclosure proceedings against Bhatti that deprived him of property. There are two relevant circumstances that must be taken in account when assessing the sufficiency of notice at the time notice is sent:

(1) Whether the address was one to which mail could be delivered, which may not be the case when the property is to be foreclosed and may be vacant; and

(2) The fact that Bhatti was the sole property owner and there were no other claimants or interested persons who would protect his interests if he himself did not receive the notice.

The city was foreclosing on Bhatti's property; the address listed for Bhatti on the assessor's rolls was the foreclosed property address, though the city is alleged to have had his actual residence address on his building permit applications. Properties being foreclosed on may have a higher vacancy rate.[9] Courts traditionally have held that there is a presumption that when a regular-mail letter is sent to the correct address, the letter is received. *See, e.g., Schlereth v. Hardy*, 280 S.W.3d 47, 51 (Mo. banc 2009); *Clear v. Missouri Coordinating Bd. for Higher Educ.*, 23 S.W.3d 896, 900 (Mo.App.2000). This presumption is the underlying premise for courts' holding, that in some circumstances, notice by regular mail satisfies due process. *See Mullane*, 339 U.S. at 316, 70 S.Ct. 652; *Flowers*, 547 U.S. at 220, 126 S.Ct. 1708.

But the presumption that mail sent is mail received—a presumption that lawyers learn early and often, starting with their first-year contracts course—does not apply to properties in foreclosure. The high vacancy rate directly undermines this presumption. Moreover, here, the city itself had notice that the specific property was vacant because of Bhatti's application for a building permit for this property.

The United States Postal Service does not deliver mail to vacant homes.[10] It is unreasonable to assume that mail sent to a house in foreclosure is received by the intended recipient. When providing notice of a foreclosure proceeding, first-class mail is not reasonably calculated to give notice and does not satisfy due process, especially as in this case where the property owner in fact did not receive notice.

The other circumstance that makes first-class mail defective as a means of due process notice is that Bhatti is the sole property owner. The condition cited in

---

9. John P. Relman. *Foreclosures, Integration, and the Future of the Fair Housing Act*, 41 IND. L.REV. 629, 633 (2008) (describing the correlation between housing foreclosures and vacancies); Dan Immermuch & Geoff Smith, *The External Cost of Foreclosure: The Impact of Single–Family Mortgage Foreclosure on Property Values*, 17 HOUSING POL'Y. DEBATE 57 (2006). The principal opinion's suggestion that homes being foreclosed do not have a higher vacancy rate defies common experience.

10. Press Release, United States Postal Service, Postal Service Moves to Improve Address Quality for Mailing Industry (Mar. 26, 2008), *available at* http:www.usps.com/communications/newsroom/2008/pr08_031.htm. The postal service policy of not delivering mail to vacant homes benefits the city of St. Louis. Undelivered mail is an invitation for burglars. Surely city officials know of and support this policy.

*Mullane*—"individual interest [that] does not stand alone but is identical with that of a class"—simply is not present. *Mullane*, 339 U.S. at 316, 70 S.Ct. 652. The Supreme Court recognized that notice received by a majority of the class of beneficiaries is sufficient to ensure that the rights of individuals in the class were represented. *Id.* Because all beneficiaries of the trusts had similar rights, those class members reached by notice would protect the rights of those class members who were not reached by notice. Here, there was no class. Bhatti was the only person who could protect his interest in the property.

### Were the Mailed Notices Returned?

Another measure of the effectiveness of mailed notice is whether the mail is returned undelivered. The Supreme Court in *Flowers* held that if notice is returned to the state, the state must take additional steps to provide adequate notice. *Flowers*, 547 U.S. at 220, 126 S.Ct. 1708. Chief Justice Roberts's opinion for the Supreme Court acknowledges that it is examining the effectiveness of notice *after* it was sent, rather than at the time it was sent—a different approach than in prior cases.

The circuit court and the principal opinion rely on an after-the-fact look and then, surprisingly, place the burden on property owner Mohammad Bhatti to prove that the undelivered notice was returned to the city collector or sheriff. What the principal opinion ignores is that *Flowers*—and this Court's decision in *Schlereth*—involved *certified* mail, which creates a record of whether the notice is delivered.[11] In this case, the city does not pay the extra money to get the record that certified mail provides. To meet the *Flowers* due process standard, in the absence of a postal service record, the city should maintain records detailing when notices are "returned to sender."[12]

But, when considering who has the burden to show whether the mail was returned, the crucial question is which party has access to the information that allows it to carry its burden. The sheriff and the city collector—as the parties sending notice—are the parties with the ability to maintain records of when notices are returned. The property owner cannot. *Flowers*, 547 U.S. at 235, 238–39, 126 S.Ct. 1708, says that the city must use other means of notice if the mailed notice is returned, including something as simple as posting a notice on the property—a form

**11.** There is precedent that first-class mail is a constitutionally sufficient, even desirable form of notice, *where there is no doubt that the recipient lives at the address*. In *Flowers*, 547 U.S. at 234–35, 126 S.Ct. 1708, the Supreme Court said that notice by first-class mail enabled the mail to be left at the residence, unlike certified mail that only could be retrieved within a specified period of time. Additionally, in the event of the recipient moving, first-class mail can be forwarded to a new mailing address by either the current recipient or the postal service. *Id.* The attributes of first-class mail that make it a constitutionally sufficient form of notice, however, are not present if the house is vacant. If the property is vacant, there is no one to receive the mail nor forward the mail—it is simply undeliverable. Therefore, prior rationale holding that delivery by mail satisfies the due process clause is not applicable in these circumstances. *See also Schlereth v. Hardy*, 280 S.W.3d at 47, 51.

**12.** The record in this case does not indicate whether the notices sent by the collector and the sheriff were "returned to sender." After Bhatti's hearing, however, Bhatti's counsel obtained documents from the sheriff's office that notices in fact were "returned to sender," but, because these documents were not introduced as evidence in the circuit court, this Court cannot consider them on appeal, as the principal opinion notes.

of notice that undoubtedly would have worked in this case.

The city can defend its notice by showing that it keeps a record of returned, undelivered mail in these cases and that no such return occurred in this case. If the city does not keep such a record, it cannot claim the presumption that the mail was delivered. It is only by documenting what notices are returned that the city can have the benefit of cases that approve first-class mail as an adequate means of notice. *See Schlereth*, 280 S.W.3d at 53.

What is important to note, for due process purposes, is that the city collector has *no* method of recording whether notice has been returned. If the city cannot keep track of such things, then its due-process obligation is to serve traditional process on Bhatti.

Service of process has been the traditional manner of ensuring notice. But *Mullane* authorized other methods where there was assurance that the notice would be effective to protect the interests of those so notified.[13] If the city is unable to fulfill the requirements of one of those other authorized means, then service of process is required. Bhatti has a job, he owns other property in the city, he allegedly listed his residence address on building permit applications with the city—in short, he should be no more difficult to find than any other such property-owning, job-holding litigant on whom the sheriff serves process. The extra cost of serving process ultimately will not be borne by the city anyway; that cost will be paid by the owner or foreclosure purchaser who satisfies the city's tax lien. The city breaks even whether it spends one dollar or 100 to serve notice. In this case, service of process by traditional means is the best notice practicable where there is no assurance that a less expensive method would provide actual notice; traditional service of process is the only constitutional means.

The benefit to the city of ensuring that constitutionally sound notice is provided is that fortuitous harm will not be inflicted on those who are investing their money and time in improving buildings. The benefit to the foreclosure purchaser is to ensure that the title the purchaser receives is not subject to a later challenge on due process grounds.

## Conclusion

If the due process standard of "notice" as applied in *Mullane* was not clear when the municipal land reutilization law was enacted in 1971, subsequent cases have made clear what the Supreme Court meant when it said that notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action." *Mullane*, 339 U.S. at 309–10, 70 S.Ct. 652 (citations omitted). In light of the Supreme Court's clarifications of its *Mullane* standard, common sense requires that the city be required to keep records showing whether its notice was returned. In the absence of such a procedure, in circumstances where there is doubt about the efficacy of the notice, the city should serve process—

---

13. While it is not the courts' responsibility to prescribe which form service should take, an alternative to the statutorily-authorized mail should be noted. *Flowers*, 547 U.S. at 233, 126 S.Ct. 1708. The United States Postal Service provides a service that identifies vacant properties. USPS, Postal Service Moves to Improve Address Quality for Mailing Industry (Mar. 26, 2006), *available at* www.usps.com/communications/newsroom/2008/pr08_031.htm. Utilizing this service would allow the city to ascertain if the address listed was a valid mailing address. If the address is not listed as a valid mailing address, the city could fulfill its obligation by serving process.

which at the end of the proceeding would cost the city nothing.

While the city's interest in seizing distressed tax-delinquent properties may have made an inexpensive process desirable in 1971, the property that was the subject of this proceeding in the 21st century was not distressed nor its owner beyond reach. The mail-notice procedure followed here is not in the city's best interest—those like Mohammad Bhatti who invest money and sweat in rehabbing distressed properties can lose their money and their sweat to those who search the published foreclosure notices for bargains that are almost too good to be true. The record shows that an alert investor got title to a property listed for sale at $169,900.00 for a little cash—$7,600.00—and not much sweat.

Of course, there is nothing inherently unlawful about a city government acting contrary to its own interests. But whether the city was acting in its own best interests, or simply following by rote the provisions of a statutory scheme that is constitutionally deficient in this case, the bottom line is the same: Mohammad Bhatti's property was taken in violation of his right to due process of law. The first-class mail notices that were sent to him at the property address did not satisfy Bhatti's constitutional right to notice.

When a property owner loses his property in a proceeding that violates due process, the only constitutional remedy is to wipe the slate clean and restore Bhatti to the "position he would have occupied had due process of law been accorded to him in the first place." *Armstrong,* 380 U.S. at 552, 85 S.Ct. 1187. Accordingly, I would reverse the judgment and remand for further proceedings to allow Bhatti an opportunity to be restored to ownership of his property upon payment of his taxes and other authorized expenses properly chargeable to him.