In the Matter of FORECLOSURE OF LIENS FOR DELINQUENT LAND TAXES BY ACTION IN REM: Collector of Revenue, by and through the Director of Collections for Jackson County, Missouri, Respondent,

v.

Terry HOLTON, Appellant,

and

Christina McIntosh, Respondent.

No. WD 76280.

Missouri Court of Appeals, Western District.

Jan. 14, 2014.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 4, 2014.

Application for Transfer Denied May 27, 2014.

---

Whitney S. Miller, Assistant County Counselor, Kansas City, MO, for Respondent Jackson County.

Bernard J. Rhodes, Kansas City, MO, for Appellant.

J. Casey Martin, Kansas City, MO, for Respondent McIntosh.

Before DIV III: KAREN KING MITCHELL, Presiding Judge, and LISA WHITE HARDWICK and GARY D. WITT, Judges.

KAREN KING MITCHELL, Presiding Judge.

Terry Holton appeals the trial court's judgment denying his Verified Motion to Vacate Judgment and Set Aside Deed. Holton claims that the trial court erred in denying his motion and confirming the sale of his condominium unit for delinquent

property taxes because Jackson County failed to comply with due process requirements in that, after notices sent to Holton by mail were returned as undeliverable, the County failed to take adequate additional steps to provide notice of the tax sale to Holton. Because the County failed to take the additional, available, practicable step of mailing a notice letter addressed to "occupant" after it became aware that previous notice attempts had failed, Holton's due process rights were violated and the trial court erred in denying Holton's motion. We reverse the judgment of the trial court.

### Factual and Procedural Background

In December 2004, Holton purchased a condominium unit located at 600 East 8th Street, Unit 11S, Kansas City, Jackson County, Missouri (Property). There was no mortgage on the Property and Holton was the only named grantee.[1] Holton never lived at the Property, and it was always used as a rental unit. Despite not living there, Holton listed the Property's address as his mailing address on the deed.[2] Since November 2006, Holton lived at the same residence in Overland Park, Kansas. At trial, Holton acknowledged that the Property's address was never his mailing address, that "[t]here was no reason for any mail to be delivered to that address for [him]," and that he "assume[d]" any mail sent to him at the Property's address "would be returned undeliverable." Holton never attempted to provide the County with his current mailing address.

From 2004 to 2007, Holton's son lived at the Property, and he occasionally brought Holton mail that was delivered to the Property and addressed to Holton. In November 2008, Holton leased the property to a new tenant. In July 2010, the second tenant moved out and the Property was leased to a third tenant. The third tenant renewed his lease in 2011 and again in 2012; he was contracted to pay rent to Holton through June 30, 2013. After Holton's son moved out in 2007, Holton was not forwarded any additional mail from his tenants.

Holton testified that he did not believe he owed any taxes on the Property because the building where the Property was located had been redeveloped into condominiums and the developer was granted tax abatement on the value of the improvements. Holton testified that he made all of the required PILOT (payment in lieu of taxes) payments to the condominium association, and he was unaware of any additional assessments billed annually by the City of Kansas City (City) to property owners that were not included in the Property's tax abatement. County records reflected that Holton paid all taxes and assessments owed in 2005, 2006, and 2007. And, in 2007, the records reflected that "Terry Holton" paid the County with an electronic check. After 2007, Holton made no additional payments to the County, and the Property became tax delinquent. Despite testifying that he was unaware of any unabated taxes or assessments, Holton

---

1. Holton has been married since 2002, but when he purchased the Property in 2004, he chose to be the only named grantee. At trial, although noting that he intended for the Property to be titled in his name alone, he also acknowledged that the deed mistakenly stated that he was "a Single Person." Holton reviewed the information on the deed at the time of purchase but made no attempt to correct his erroneous marital status.

2. "All deeds ... *must contain a mailing address* of one of the grantees named in the instrument." § 59.330 (emphasis added). All statutory references are to the Missouri Revised Statutes 2000, as updated through the 2013 Cumulative Supplement, unless otherwise noted.

does not dispute that the Property was tax delinquent for the years 2008, 2009, 2010, and 2011, or that, because of this delinquency, the property was subject to tax foreclosure.[3]

The County's petition, seeking judgment of foreclosure for unpaid taxes, was filed on May 24, 2011, pursuant to the Land Tax Collection Law, §§ 141.210 to 141.810 and 141.980 to 141.1015, after the Property had been tax delinquent for three consecutive years.[4] On June 3, 2011, the County made its first notice attempt by certified mail, return receipt requested, to "Holton Terry" at the Property's address, notifying him of the filing of the foreclosure action. The first notice letter was returned to the County on June 11, 2011, and the envelope was marked: "RETURN TO SENDER—NOT DELIVERABLE AS ADDRESSED—UNABLE TO FORWARD." On October 6, 2011, a judgment lien was entered against the Property for the unpaid taxes, special assessments, interest, penalties, attorney's fees, and costs, and a sale of the Property was ordered by the circuit court. On October 14, 2011, a second letter was sent by certified mail, return receipt requested, to "Holton Terry" at the Property's address, notifying him of the judgment. The second notice letter was returned on October 20, 2011, and the envelope was marked: "RETURN TO SENDER—ATTEMPTED–NOT KNOWN—UNABLE TO FORWARD." Then, in June 2012, approximately two months before the scheduled tax sale, two additional letters were mailed to Holton, notifying him of the upcoming sale. On June 25, 2012, a notice letter was sent by certified mail, return receipt requested, to "Holton Terry" at the Property's address. The notice letter was returned on June 27, 2012, and the envelope was marked: "RETURN TO SENDER—ATTEMPTED–NOT KNOWN—UNABLE TO FORWARD." Also on June 25, 2012, a notice letter was sent by regular first-class mail, to "Holton Terry" at the Property's address. On June 28, 2012, the regular-mail notice letter was returned and the envelope was marked: "RETURN TO SENDER—ATTEMPTED–NOT KNOWN—UNABLE TO FORWARD."

On July 13, 2012, the County attempted to post notice on the Property, but a signed affidavit indicated that the County was "unable to [post notice] because [the] parcel was land locked." Notice was successfully published in The Pulse, a legal publication serving Jackson County, Kansas City, and Independence, in August 2012, for four consecutive weeks before the date of the sale. Holton does not dispute that notice was published, but testified that he never received notice, published or otherwise, of the impending tax foreclosure sale.

On August 28, 2012, the Property was sold at the County's tax foreclosure auction to the highest bidder, Christina McIn-

---

**3.** The record reflects that the City billed property owners in the area where Holton's Property was located for a parks and trafficway assessment and a Community Improvement District (CID) assessment. These City "special assessment[s]," along with a "[b]ase" tax for the real property, were apparently billed annually by the County collector. It is the special assessments that appear to have gone unpaid in the present case resulting in the tax delinquency status of Holton's Property. Holton does not dispute that his property was tax delinquent. Therefore, there is no need to differentiate "assessments" from "taxes"; suffice it to say that, after 2007, Holton failed to pay all assessments and taxes owed on his Property and his Property was subject to tax foreclosure.

**4.** The Land Tax Collection Law, §§ 141.210 to 141.810 and 141.980 to 141.1015, applies to Jackson County because of the County's charter form of government. See § 141.220(5).

tosh, for $30,000. As of the date of the sale, the amount of unpaid taxes was $743.12. On December 11, 2012, following a confirmation hearing, judgment was entered confirming the sale and ordering the Jackson County Court Administrator to execute and issue a deed to McIntosh. Holton first learned of the Property's delinquent tax status and the August 2012 tax sale in January 2013, when his tenant stopped payment on a rent check. At that point, Holton's wife contacted the tenant who informed her that McIntosh purchased the Property and had instructed that rent be paid to her. After receiving this information, Holton's wife went to the County's website and discovered that, as of the date of the August 2012 tax sale, the Property was tax delinquent for 2008, 2009, 2010, and 2011. On February 7, 2013, Holton filed a Verified Motion to Vacate Judgment and Set Aside Deed. On March 25, 2013, following a hearing, Holton's motion was denied.

In its judgment denying Holton's motion, the trial court issued findings related to the County's multiple attempts to notify Holton. The trial court found that the County "complied with, and exceeded[,] the notice requirements of the Missouri Land Tax Collection Law (Mo.Rev.Stat. § 141.440) by sending notification of the court-ordered sale for delinquent taxes ... to [Holton] at his address on the records of Jackson County via both certified and regular first[-]class mail." [5] The court found further that "Jackson County took additional reasonable steps by mailing all correspondence to the Record Owner via both certified and regular first[-]class mail; searching the records of the State of Missouri and the Missouri Courts (*Case.net*) in an effort to find an address for the Record Owner; and, by attempting to post notice at the Property." Regarding the attempt to post notice, the court found: "On July 13, 2012[,] representatives of the Jackson County Collector attempted to post notice of the court-ordered sale at the Property, but were unable to do so because the Property is located in a locked condominium building, into which they were unable [to] gain entry." The court also found that notice was successfully published in The Pulse "for at least four consecutive weeks prior to the sale." In denying Holton's motion, the trial court upheld and confirmed the judgment and deed transferring title to McIntosh in all respects. Holton now appeals.

## Standard of Review

■ The denial of Holton's motion "will be sustained unless there is no substantial evidence to support it or unless it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law." *In re Foreclosures of Liens for Delinquent Land Taxes v. Bhatti,* 334 S.W.3d 444, 447 (Mo. banc 2011). " 'We must view the evidence and the inferences therefrom in the light most favorable to the judgment and disregard all contrary evidence.' " *United Asset Mgmt. Trust Co. v. Clark,* 332 S.W.3d 159,

---

5. Although the trial court may be correct that the County "exceeded" the statutory notice requirements, as discussed, *infra,* this does not necessarily mean that the County satisfied due process requirements. Additionally, the trial court findings state that the County sent notice by regular first-class mail on June 3, 2011, pursuant to section 141.440. This finding does not affect the outcome, and there is no statutory provision requiring notice by reg-

ular mail; we note the finding because there is no evidence in the record to support it. The only evidence of notice sent by regular first-class mail is from a letter mailed on June 25, 2012. Section 141.440 mandates only that the County send notice "by restricted, registered or certified mail ... within thirty days after the filing of [the] petition"; it does not require notice to be sent by regular mail.

163 (Mo.App. W.D.2010) (quoting *Cedar-Bridge, LLC v. Eason,* 293 S.W.3d 462, 466 (Mo.App. E.D.2009)), *abrogated on other grounds by Sneil, LLC v. Tybe Learning Ctr., Inc.,* 370 S.W.3d 562, 573 (Mo. banc 2012). Witness credibility and the weight to be given to testimony is for the trial court to determine, and the court can believe all, part, or none of any witness's testimony, even when that testimony is uncontradicted. *CedarBridge,* 293 S.W.3d at 467; *Smith v. Dir. of Revenue,* 259 S.W.3d 84, 88, 90 (Mo.App. W.D.2008). Moreover, we presume that the trial court's judgment is correct, "and an appellant has the burden of proving it erroneous." *Williams Const., Inc. v. Wehr Const., LLC,* 403 S.W.3d 660, 662 (Mo.App. S.D.2012). And, we "reverse the judgment as against the weight of the evidence with caution and with a firm belief that the judgment is wrong." *Bhatti,* 334 S.W.3d at 447. "Our review related to questions of law, however, is *de novo,* and no deference is afforded to the trial court's legal conclusions." *Clark,* 332 S.W.3d at 163.

## Analysis

Holton raises one point on appeal. He claims that the trial court erred in denying his motion because the County failed to comply with due process requirements in that, after all written notices were returned as undeliverable, the County failed to take any additional reasonable steps to notify Holton of the tax sale, such as: posting notice at the Property as required by statute, addressing a notice to "occupant," or serving him at his home address. Holton asserts that his home address, phone number, and employer were "easily accessible and readily available to the public," and, therefore, either the County or a process server could have located his current address by performing a simple internet search. We disagree with Holton that, under the circumstances presented, the County was required to perform an open-ended internet search to locate a property owner who failed to provide the correct mailing address to the County. However, because the County was aware that all attempts to notify Holton had failed and at least one reasonable additional step was available to the County and practicable under the circumstances, the trial court erred in denying Holton's motion.

■ Notice of tax foreclosure in Jackson County is governed by statutory provisions and the principles of due process, and " '[t]ax sales have always been carefully scrutinized by this [C]ourt.' " *Stadium W. Props., L.L.C. v. Johnson,* 133 S.W.3d 128, 141 (Mo.App. W.D.2004) (quoting *Bussen Realty Co. v. Benson,* 349 Mo. 58, 159 S.W.2d 813, 814 (1942), *overruled on other grounds by Powell v. Cnty. of St. Louis,* 559 S.W.2d 189, 196 (Mo. banc 1977)). Under the applicable statutes (the Land Tax Collection Law), the County, through the office of its tax collector, is directed to make multiple notification attempts to owners of tax delinquent property before proceeding with a tax sale. These statutory provisions mandate that the first notice by mail is attempted when the petition for judgment of foreclosure is filed; a second notice attempt by mail is optional when the judgment of foreclosure is obtained; and a third notice attempt by mail is mandated concurrently with the beginning of notice by publication of the tax sale. *See* §§ 141.440; .500.2; .540.5. The person named in the petition—the same person to whom notices are mailed—is the last known person billed by the collector, or the last known record owner, if different; all notices are mailed to the address on file with the tax collector, and the statutes require that they are sent by certified, registered, or restricted mail. §§ 141.440; .500.2; .540.5. The Land Tax Collection Law also requires publication of notice in

the weeks preceding the sale, § 141.540.1–.3, and it provides that "the county collector shall enter upon the property subject to foreclosure . . . and post a written informational notice in any conspicuous location thereon." § 141.540.4.[6]

In addition to the directives found in the applicable statutory provisions, notice of tax foreclosure is guided by the principles of due process, which may require more action on the part of the notifying party than the statutory scheme requires. *See Schlereth v. Hardy*, 280 S.W.3d 47, 52 (Mo. banc 2009) (noting that, "[f]or nearly 60 years, *Mullane* [*v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950),] has alerted American lawyers that notice provisions prescribed in state statutes may not be constitutionally sufficient"). "Due process does not require that a property owner receive actual notice before the government may take his property." *Jones v. Flowers*, 547 U.S. 220, 226, 126 S.Ct. 1708, 164 L.Ed.2d 415 (2006). But before property can be sold by a government entity for unpaid taxes, due process "requires the government to provide the owner 'notice and opportunity for hearing appropriate to the nature of the case.' " *Id.* at 223, 126 S.Ct. 1708 (quoting *Mullane*, 339 U.S. at 313, 70 S.Ct. 652). Thus, although actual notice is not required, the notifying party must "provide 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' " *Id.* at 226, 126 S.Ct. 1708 (quoting *Mullane*, 339 U.S. at 314, 70 S.Ct. 652).

In the present case, the County made three unsuccessful attempts to mail notice to Holton by certified mail, one unsuccessful attempt to mail notice by regular mail, and one unsuccessful attempt to post notice on the Property. In addition, notice was published in The Pulse prior to the sale. Holton argues that, despite these attempts to notify him of the tax foreclosure sale, the County's actions fell short of satisfying the requirements of due process. We agree.

Before publishing notice and attempting to post notice on the Property, the County sent three letters to Holton by certified mail, attempting to notify him of the foreclosure proceedings and the impending tax sale. These notices were sent to "Holton Terry" at the Property's address and all were returned as undeliverable. In *Jones*, the United States Supreme Court specifically addressed the issue of whether due process "requires the government to take additional reasonable steps to notify a property owner when notice of a tax sale is returned undelivered." 547 U.S. at 225, 126 S.Ct. 1708. Before *Jones*, notice was deemed constitutionally sufficient when it "was reasonably calculated to reach the intended recipient when sent," but the Court had never before "addressed whether due process entails further responsibili-

---

**6.** Holton argues that the word "shall" used in the first part of this statute makes posted notice mandatory. However, the last sentence of section 141.540.4 states: *"If the collector chooses* to post such notices as authorized by this subsection, such posting must be made not later than the fourteenth day prior to the date of the sale."* (Emphasis added.) The County argues that this language makes posted notice permissive. We need not resolve the issue of whether posting notice is mandatory or permissive under the Land Tax Collection Law. As noted *infra*, compliance with a state's statutory notice scheme does not guarantee that notice is sufficient. Notice of a tax sale of private property must also comply with due process. Further, the only issue presented to this Court in Holton's point relied on is whether the County's attempts at notice complied with due process. Thus, compliance with the statutory scheme for notice of tax sales, while mentioned in the argument portion of Holton's brief, is not the issue before this Court.

ty when the government becomes aware prior to the taking that its attempt at notice has failed." *Id.* at 226–27, 126 S.Ct. 1708 (noting further that " 'notice required will vary with circumstances and conditions' " (quoting *Walker v. City of Hutchinson,* 352 U.S. 112, 115, 77 S.Ct. 200, 1 L.Ed.2d 178 (1956))). The *Jones* Court stated that the means used to attempt notice must be those that "one 'desirous of actually informing' " the property owner would undertake. *Id.* at 229, 126 S.Ct. 1708 (quoting *Mullane,* 339 U.S. at 315, 70 S.Ct. 652). Ultimately, the Court held that "when mailed notice of a tax sale is returned unclaimed, the State must take additional reasonable steps to attempt to provide notice to the property owner before selling his property, if it is practicable to do so."[7] *Id.* at 225, 126 S.Ct. 1708. However, *Jones* held further that, "if there were no reasonable additional steps the government could have taken upon return of the unclaimed notice letter, it cannot be faulted for doing nothing." *Id.* at 234, 126 S.Ct. 1708.

In *Jones,* the Court reviewed the notice attempts and found that three additional steps not taken by the government were available, reasonable, and practicable under the circumstances: sending notice by regular mail, posting notice on the front door of the property, or addressing "otherwise undeliverable mail to 'occupant.' " *Id.* at 234–35, 126 S.Ct. 1708. The *Jones* Court noted that taking additional steps "would increase the likelihood that the owner would be notified that he was about to lose his property, given the failure of a letter deliverable only to the owner in person." *Id.* at 235, 126 S.Ct. 1708. Because the only notice attempts made in *Jones* were by certified mail (which was returned as unclaimed) and publication, and *none* of the above-noted "relatively easy" additional notification steps were attempted, the Court found that the "effort to provide notice to Jones of an impending tax sale of his house was insufficient to satisfy due process given the circumstances of this case." *Id.* at 223–24, 239, 126 S.Ct. 1708.

In *Schlereth v. Hardy,* the Missouri Supreme Court, following the holding in *Jones,* found that, where a certified-letter notice was returned unclaimed, "[s]ome follow-up notice was required, whether by regular mail, posted notice calculated to notify the owner[,] or service by a process server," and when no follow-up was attempted, the requirements of due process were not met. 280 S.W.3d at 53.[8] Again,

---

7. The present case involves letters returned as undeliverable, not unclaimed. "When the postal service returns a letter as undeliverable with no forwarding address, the sender knows that they have the wrong address for the intended recipient." *United Asset Mgmt. Trust Co. v. Clark,* 332 S.W.3d 159, 178 (Mo. App. W.D.2010), *abrogated on other grounds by Sneil, LLC v. Tybe Learning Center, Inc.,* 370 S.W.3d 562, 565 (Mo. banc 2012). "When a certified letter is returned as unclaimed, the sender simply knows that the intended recipient has not received the notice." *Id.* Although there is a clear distinction between these two types of returned mail, the holding in *Jones* applies to both. The focus of the Court's analysis in *Jones* was on what additional steps the government must take before selling private property when the governmental entity is aware that the property owner did not receive notice of the impending sale. The Due Process considerations addressed in *Jones* apply equally whether the notice is returned unclaimed or undelivered.

8. *Schlereth* dealt with the notice provisions of Chapter 140, which is applicable to Missouri counties other than first-class charter counties and cities other than St. Louis City. Under section 140.405.2, the purchaser of tax delinquent property is required to notify any party with a publicly recorded interest in the property, by certified mail, of their right to redeem "[a]t least ninety days prior to the date when a purchaser is authorized to acquire the deed." In *Schlereth,* the Court spe-

however, "follow[-]up notice is ... required [only] 'if it is practicable to do so.'" *Clark*, 332 S.W.3d at 181 (quoting *Jones*, 547 U.S. at 225, 126 S.Ct. 1708). Both *Jones* and *Schlereth* relied on the fact that the notifying party *knew* that the notice attempts had failed, and both held that the notifying party was therefore required to attempt at least some additional follow-up steps that were available and practicable under the circumstances to notify the property owner of the tax sale. *See Jones*, 547 U.S. at 225, 234–35, 126 S.Ct. 1708; *Schlereth*, 280 S.W.3d at 50–53; *see also Bhatti*, 334 S.W.3d at 448 (noting that "[a] government entity must take reasonable, additional steps to notify the property owner if it knows or has reason to know that the notice was ineffective"). "Without *knowledge* that the notice was not reasonably calculated under the[ ] circumstances to apprise [the o]wner, the [notifying party] was not required to take any further steps to notify [the o]wner." *Bhatti*, 334 S.W.3d at 449 (emphasis added).

Using these guidelines, we review the notification attempts made by the County in this case to determine whether the County was obligated to make further notice attempts after learning that the additional steps it had already undertaken failed to provide Holton with notice. The County argues that because it sent notice of the impending tax sale by regular mail—an additional step recognized in both *Jones* and *Schlereth*—due process was satisfied, even though the notice sent

by regular mail was returned as undeliverable. In other words, the County suggests that, if *any* additional reasonable step is taken, due process is satisfied, even if the County becomes aware that the additional step was unsuccessful. We disagree.

■ A reasonable additional step is one that increases the likelihood that the property owner will receive notice of the tax sale without imposing a significant additional burden on the notifying party. "[A]ssessing the adequacy of a particular form of notice requires balancing the 'interest of the [notifying party]' against 'the individual interest sought to be protected by the Fourteenth Amendment.'" *Jones*, 547 U.S. at 229, 126 S.Ct. 1708 (quoting *Mullane*, 339 U.S. at 314, 70 S.Ct. 652). When the notifying party becomes aware that one or more of the reasonable additional steps it has undertaken failed to provide notice, due process dictates that the additional steps identified in *Jones* and *Schlereth* must be undertaken, *if* those additional steps are reasonable, practicable, and available under the circumstances of the given case. While the Supreme Court indicated that the courts are not responsible for prescribing the specific form of service that a notifying entity must adopt, *Jones*, 547 U.S. at 234, 126 S.Ct. 1708, and certainly there will be times when some or all of the additional steps identified in *Jones* and *Schlereth* will be unreasonable, impracticable, or unavailable under the circumstances,[9] governmental entities must, at a minimum, attempt all of

cifically noted that "[i]n this case, there is no question that Schlereth, proceeding under section 140.405, takes on the governmental obligation to give notice that satisfies due process." 280 S.W.3d at 51. Therefore, the due process analysis is the same regardless of whether it is the purchaser sending notice under Chapter 140, or the County sending notice under Chapter 141.

9. *See Clark*, 332 S.W.3d at 181–83 (noting that, where the property subject to tax sale was rural, unimproved land owned by an offshore trust, additional steps set out in *Jones* were not required even though all attempts at mailed notice were returned undeliverable, because addressing mail to "occupant" was impracticable where there was no residence, and posting notice was unreasonable given that there were no buildings on the property).

the additional steps identified in these cases if they are reasonable, practicable, and available, and if the government is aware that previous attempts at notice have failed. This is true because these additional steps are both "relatively easy" and increase the likelihood that the property owner will receive notice. *Jones*, 547 U.S. at 235–36, 126 S.Ct. 1708. Furthermore, as noted *supra*, the focus of the analysis in *Jones* and *Schlereth* is on the additional steps the notifying party must take when it is aware that the property owner has not received notice of the impending sale. *Jones*, 547 U.S. at 225–26, 234–35, 126 S.Ct. 1708; *Schlereth*, 280 S.W.3d at 50–53. Thus, the additional step of attempting notice by regular mail addressed to Holton at the Property, which the County knew was returned undeliverable, did not satisfy due process.

▮▮▮ After the mailed notices failed, the County attempted to provide notice by posting on the Property. Posting is a potential additional step recognized in both *Jones* and *Schlereth*. Here, however, it is undisputed that this attempt at notice also failed. The County presented an affidavit stating that it was "unable" to post notice because the "parcel was land locked." The trial court found that the County's attempt at posting notice failed "because the Property is located in a locked condominium building, into which [the County was] unable to gain entry." In support of his argument that posting notice was an additional step the County should have taken, Holton asserts that the trial court should have credited his testimony that there was a concierge on duty and, thus, the County's employees could have gained access to the building to post notice on the Property. Although the trial court did not make any express credibility findings, under our standard of review, we must infer that, by finding that the County was "unable to gain entry," the trial court did not credit Holton's testimony that there was a concierge on duty who would have granted access to the interior of the building. Although Holton argues that he presented uncontradicted evidence that the building, and therefore his Property, was accessible to the County, the trial court was not required to accept this evidence, and we will defer to the trial court's findings of fact. *See Clark*, 332 S.W.3d at 163. Moreover, because Holton alleged that his due process rights were violated by the County's failed attempt to post notice, it was his burden to prove that posting notice was practicable under the circumstances. *See Bhatti*, 334 S.W.3d at 446, 448–50 (indicating that a taxpayer who alleges that his due process rights were violated must present evidence to prove those allegations at trial). Here, because the trial court did not credit Holton's testimony, he failed to prove that posting notice was practicable under the circumstances. However, the County was still required to undertake reasonable, practicable, additional steps that were available under the circumstances, and because the County failed to mail notice to the Property addressed to "occupant," Holton's due process rights were violated.

In *Jones*, the Court recognized that mailing a notice letter addressed to "occupant" was a reasonable "additional step" available to the notifying party. 547 U.S. at 235, 126 S.Ct. 1708. This step is inexpensive and simple to accomplish and, as the *Jones* Court recognized, it is an action that increases the likelihood that a property owner will receive notice of an impending tax sale. *Id.* at 235, 126 S.Ct. 1708. Here, the County knew that the Property was not vacant land, and there is no evidence in the record indicating that the County believed it was a vacant residential property. Moreover, the County knew that Holton remained the record owner.

Therefore, under the circumstances, we find that mailing a notice letter addressed to "occupant" was a practicable additional step, available to the County and reasonably calculated to provide notice to Holton, and, as such, it should have been attempted after the County became aware that the other attempts at notice failed. "It suffices for present purposes that we are confident that additional reasonable steps were available for [the County] to employ before taking [Holton's] property," *id.* at 238, 126 S.Ct. 1708, one of which was mailing a notice letter to the Property addressed to "occupant." [10]

In *Schlereth,* our Supreme Court identified notice by process server as another additional step that, if reasonable under the circumstances, may be required to satisfy due process. 280 S.W.3d at 53. However, in *Schlereth,* previous attempts to provide notice by mail were returned *unclaimed.* Thus, the notifying party had a presumptively valid address to use in an attempt to provide personal service.[11] In contrast, here, where previous attempts to mail notice were returned as *undelivera-* ble, the County did not have an address to use for personal service. Thus, personal service was not reasonable under these circumstances unless the County had the duty to take further steps to find an alternative address for Holton, a finding we need not make under the present circumstances.

Holton argues that the County should have performed an internet search to locate his correct address. He asserts that a simple Google search for "Terry Holton, Kansas City" produces immediate results showing his employer, current address in Kansas, and current phone number. In *Jones,* however, the Court rejected the argument that the collector "should have searched for [Jones's] new address in the . . . phonebook and other government records such as income tax rolls," and noted that it did "not believe the government was required to go this far." *Jones,* 547 U.S. at 235–36, 126 S.Ct. 1708. The *Jones* Court noted that, "[a]n open-ended search for a new address—especially when the State obligates the taxpayer to keep

**10.** In the present case, the County also undertook the additional step, not identified in *Jones* or *Schlereth,* of searching its own databases and *Case.net* for an alternative address for Holton. While such an alternative additional step may satisfy due process under different facts, the searches conducted by the County in this case produced no additional information and, thus, did not increase the likelihood that notice of the tax foreclosure would reach Holton. As no additional information was obtained, the County simply continued to send letters to the address it already knew was incorrect. Thus, although we commend the County for performing this additional search, we find that it falls short of satisfying due process in the present case.

**11.** In addition to the notification letter being returned as unclaimed instead of undeliverable, *Schlereth* is also distinguishable from the present case because it involved the application of Chapter 140, not Chapter 141, and thus, the notifying party was the individual purchaser, not the County. *See supra* note 8. This is notable because, as a purchaser, the notifying party in *Schlereth* had to notify only the person whose property he or she purchased. *See* § 140.405.2 (indicating that a tax sale purchaser is required to notify the prior owner of his or her redemption rights "[a]t least ninety days prior to the date when a purchaser is authorized to acquire the deed"). In contrast, under Chapter 141, the County is required to locate and notify *all* property owners before a pending tax sale occurs. *See* §§ 141.440; .540.1–.5. While we need not resolve the issue here, because a governmental entity with taxing authority may be required to provide notice to hundreds of property owners under Chapter 141, a court may consider the burden placed on the governmental entity of undertaking notice by process server in determining whether such a requirement is reasonable under the circumstances.

his address updated with the tax collector—imposes burdens on the State significantly greater than the several relatively easy options outlined [in this case]." *Id.* at 236, 126 S.Ct. 1708 (citation omitted). This is particularly true, where, as here, the property owner did not take simple acts, available to him, to protect his property interest. Holton listed an address he acknowledged was never his mailing address on his original deed in violation of section 59.330.2, a law providing that all deeds "must contain a mailing address of one of the grantees named in the instrument." As the only named grantee on the original deed, Holton had a legal obligation to provide his correct mailing address on this recorded document. *Cf. Jones,* 547 U.S. at 236, 126 S.Ct. 1708 (noting a statute requiring property owners to provide the tax collector with their updated address). Nor did Holton ever correct the error or otherwise update his address even after becoming aware that property tax information was going to the address of the Property. In determining whether further additional steps are required, courts will consider the burden any additional steps place on the notifying entity, as well as the steps taken by the property owner to preserve his property interest. This is because, " '[a]t some point[,] a property owner's presumptive duty to preserve his property outweighs the responsibility of a tax collector to provide more extensive forms of notice.' " *Schwartz v. Dey,* 780 S.W.2d 42, 45 (Mo. banc 1989) (quoting *Trapf v. Lohr,* 666 S.W.2d 414, 415 (Mo. banc 1984)). Thus, the County was not obligated to search the internet for Holton's correct address and, without that address, notice by personal service was not reasonable in this case.[12]

■■■■ After the County became aware that its attempts to notify Holton of the tax foreclosure sale had failed, the County was required to take the additional steps identified in *Jones* and *Schlereth,* if those steps were available, reasonable, and practicable under the circumstances.[13] We hasten to note, that this does not mean that a notifying party is required to continue to take additional steps until actual notice is accomplished. "In *Jones,* the Supreme Court recognized that there might be occasions when nothing more could be done in trying to provide notice." *Clark,* 332 S.W.3d at 183. " 'If there were no reasonable additional steps the government could have taken upon return of the unclaimed notice letter, it cannot be faulted for doing nothing.' " *Id.* (quoting *Jones,* 547 U.S. at 234, 126 S.Ct. 1708). Additionally, "[t]he collector is not required to make 'impracticable and extended searches . . . in the name of due process,' " *Schwartz,* 780 S.W.2d at 45 (quoting *Mullane,* 339 U.S. at 317, 70 S.Ct. 652), "[n]or is he 'required to undertake extraordinary efforts to discover the . . . whereabouts of [the owner].' " *Id.* (quoting *Mennonite Bd. of Missions v. Adams,* 462 U.S. 791, 798 n. 4, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983)). This remains the law. Although notice by publication is generally insufficient to sat-

**12.** We recognize that as technology advances, the ability to locate individuals becomes easier and less expensive. Thus, it is possible that under different circumstances an internet search might be practicable and reasonable, but the burden placed on the notifying party by requiring a broader search would still have to be balanced against the steps taken by the property owner to preserve his property interest.

**13.** This does not mean that steps other than those identified in *Jones* and *Schlereth,* if reasonable, practicable, and available under the circumstances, will never be required. But, at a minimum, the steps identified in *Jones* and *Schlereth* must be attempted if the notifying party knows that previous attempts at notice have failed.

isfy due process when it is the only method of notification undertaken, *Schwartz,* 780 S.W.2d at 44, notice by publication may be sufficient when no other reasonable options are available. *See Clark,* 332 S.W.3d at 183. Further, if the notifying party does not know that a previous reasonable attempt at notice has failed, no additional steps are required. *Schlereth,* 280 S.W.3d at 51 (noting that "[u]nder *Jones,* the least that could be expected is that a regular-mail letter be sent; *if not returned,* the sender could presume that it was received where there is no question about the correctness of the address." (Emphasis added.)).

### Conclusion

Because mailing a notice letter to the Property addressed to "occupant" was an additional step that was available, reasonable, and practicable under the circumstances, we find that the County's attempts to notify Holton fell short of satisfying the requirements of due process. We reverse the judgment of the trial court. Upon reversal, the trial court is directed to set aside the deed transferring title in the Property to McIntosh and order any action necessary to restore Holton's ownership interest in the Property.

LISA WHITE HARDWICK and GARY D. WITT, Judges, concur.